

VT Halter Marine, Inc
[address illegible]

Dear Sir:

VT Halter Marine, Inc. (the "Lender") is pleased to inform you that it may consider requests for advances (the "Loan") to EMAS-AMC Inc. (the "Borrower"), a Delaware corporation, on the terms and subject to the conditions set forth below. Terms not defined herein have the meanings assigned to them in Exhibit A hereto.

1. The Loan.

1.1 The Lender is offering a Loan to the Borrower, which shall be in an amount that is the aggregate of all outstanding advances, but in no event more than $7,000,000 or the maximum amount incurred under the Repair Contract attached as Exhibit B, whichever is less. Each advance requested by Borrower and this Loan shall be used by Borrower solely to pay for work performed on the Crowley 'Barge 455-6' (the "Vessel") by VT Halter Marine, Inc., in its capacity of the "Contractor" under the Repair Contract. Work by the Contractor is defined to include all material, labor, overhead expense, general & administrative expenses and profit as quoted and agreed to between Borrower and Contractor for this work.

1.2 Advances will be requested and made in accordance with the following process. Following Borrower's receipt of an undisputed invoice for work performed under the Repair Contract, Borrower may make a written request for an advance from Lender. Borrower shall include a copy of the undisputed invoice with its request. Within five (5) Business Days of Lender's receipt of Borrower's request, the Lender shall provide written acceptance of the request and make an appropriate advance to pay for work performed on the Vessel, so long as the requested advance is within the limits set forth above. The advance will be considered made on the day of Lender's written acceptance of Borrower's request.

1.3 The Loan shall be evidenced by loan account records maintained by the Lender, which shall at any time be prima facie evidence as to date and amount of all advances requested by Borrower and provided by Lender, the total amount of the Loan, and its interest rate, interest payment dates, and outstanding amount at such time, so long as the advances are made in accordance with the process described above. This detail will be made available to the Borrower upon Borrower's written request and five (5) Business Day notice.

2. Interest

2.1 The Loan shall bear interest of six (6%) percent per annum. Interest shall be computed on the basis of a 365-day year and actual days elapsed since each advance made to Borrower. The term of the loan is for a thirty-six month period starting on the Vessel's delivery date after completion of the Repair Contract.

2.2 Interest will accrue from the date of each advance made to Borrower in accordance with Section 1.2.

**EXHIBIT A**

The ST Engineering Group

Your Trusted Partner





2.3 The Borrower shall pay the Lender a lump sum of $500,000.00 prior to delivery of the Vessel. The remaining balance will be paid on a quarterly basis once the repairs to the Vessel have been completed. The payment will include both principal and interest, the exact amount of the payment net of the lump sum payment will be determined once the Repair Contract for the Vessel has been completed.

3. Repayment/Prepayment of the Loan

3.1 The Loan, including interest accrued thereon, shall be due and payable and the Borrower shall repay the Lender on a quarterly basis, both principal and interest. The loan shall be repaid over a thirty-six month period, which starts on the Vessel's delivery date after completion of the repair contact.

3.2 The Borrower may upon giving not less than ten (10) Business Days prior written notice to the Lender, prepay a Loan including interest in whole or in part prior to its maturity date without penalty.

3.3 The Borrower's obligations under this Agreement and its indebtedness to Lender for any advances made hereunder are separate, distinct and independent of any performance, representation or warranty provided by VT Halter Marine, Inc., in its capacity of Contractor under the Repair Contract attached hereto as Exhibit B. In no event and in no way shall the condition, operability or legal status of the Vessel or the Borrower ever be construed to limit, alter, modify, waive, excuse or postpone Borrower's repayment obligations under this Agreement and Borrower's recourse, if any, against VT Halter Marine, Inc. with respect the Vessel shall be solely under the Repair Contract. VT Halter Marine, Inc. makes no representations or warranties regarding the Borrower's intended use of the Vessel, including but not limited to the Vessel's ability to operate in the coastwise trade in the United States.

4. Default Interest

Any amount of principal or interest in respect of the Loan that is not paid when due, whether at stated maturity, by acceleration or otherwise, shall bear interest from the date when due until said principal and/or interest amount is paid in full, at the interest rate stated in 2.1. Interest shall be computed on the basis of a 365-day year and actual days elapsed.

5. Payments and Taxes

5.1 All payments of principal, interest and other amounts made on or in respect of the Loan shall be made in immediately available United States Dollars for value received on the due date of payment, without





setoff, counterclaim or, to the extent permitted by applicable law, defense, and free and clear of and without deduction for or on account of any present or future withholding taxes, if applicable, now or hereinafter imposed by any subdivision or taxing authority of the United States. If any deduction or withholding is required by any applicable law, then the Borrower shall pay to the Lender such additional amount as is necessary to ensure that the net amount actually received by the Lender will equal the full amount the Lender would have received had no such deduction or withholding been required.

5.2 All sums payable hereunder to the Lender shall be paid by wire transfer to the following bank account or to such other location, or in such other manner as the Lender may from time to time designate in writing:

> Account Name: VT Halter Marine, Inc.
> Account Address: PO Box 1328, Pascagoula, MS 39568-1328
> Bank Name: Bank of America
> Bank Account # (US): 4426614911
> Routing Number/Transit (ABA) number: 0260-0959-3
> Swift Code: BOFAUS3N
> Bank Address: 2000 Clayton Rd, Concord, Calif. 94520

5.3 If any payment is due on a day that is not a Business Day, then such payment shall be paid on the next succeeding Business Day, unless such day falls in the following calendar month, in which case payment shall be due on the preceding Business Day.

5.4 The Borrower shall pay the taxes referred in Section 5.1 to the appropriate taxing authority for the account of the Lender and, as promptly as possible thereafter, send to the Lender an official receipt showing payment thereof, together with such additional documentary evidence as may be reasonably required from time to time by Lender. If the Borrower fails to pay any such taxes when due to the appropriate taxing authority or fails to remit any such official receipts or other required documentary evidence, the Borrower agrees to indemnify the Lender for and to hold the Lender harmless from and against any incremental taxes, interest or penalties that may become payable by the Lender as a result of such failure.

6. **Events of Default**

6.1 Upon the occurrence of any of the following, the Lender may by notice in writing to the Borrower declare that an Event of Default has occurred under this Agreement.

(a) The failure to make any payment of principal of or interest on the Loan or any other amount payable hereunder, within thirty (30) days after the same shall become due and payable;





(b) The breach of any other condition or obligation under this Agreement, and the continuation of such breach for thirty (30) days;

(c) The Borrower shall default under any agreement or instrument (other than this Agreement) relating to its indebtedness and such default shall continue unremedied for a period of thirty (30) days, or any applicable cure periods in connection with such indebtedness;

(d) The Borrower shall (i) file any proceeding in bankruptcy or reorganization, (ii) make an assignment for the benefit of its creditors, or (iii) fail to vacate, discharge or dismiss within thirty (30) days of its initiation (A) the filing of a proceeding in bankruptcy against it or (B) the appointment of a receiver or trustee for all or any part of the Borrower's assets;

(e) The dissolution, termination and/or liquidation of the Borrower;

(f) The Borrower shall sell, lease, transfer or otherwise dispose of (whether in one transaction or in a series of transactions) all or substantially all of its assets to or in favor of any person;

(g) The Borrower shall sell, lease, transfer or otherwise dispose of (whether in one transaction or in a series of transactions) all or substantially all of its assets related to Crowley Barge 455-6 to or in favor of any person without the Lender's prior written consent; or

(h) The Borrower shall merge, dissolve, liquidate, and consolidate with or into another person in which it is not the surviving entity.

6.2 <u>Consequences of an Event of Default</u>

Upon the occurrence of any Event of Default, the Lender, at its option, may (i) by notice to the Borrower, declare the unpaid principal amount of the Loan, all interest accrued and unpaid hereon and all other amounts payable hereunder to be immediately due and payable, whereupon the same shall become immediately due and payable, without presentment, demand, protest or further notice of any kind; and (ii) proceed to enforce all other rights and remedies available to the Lender under applicable law. Upon the occurrence of an Event of Default specified in <u>Section 6.1 (d)</u> hereof, all sums outstanding under any Loan and all accrued and unpaid interest thereon (and all other amounts due) shall thereupon and concurrently therewith become due and payable without presentment, demand, protest or other notice of any kind, all of which are hereby expressly waived.

7. <u>Counterparts</u>

The Agreement may be signed in any number of counterparts. Any single counterpart or a set of counterparts signed, in either case, by all the parties hereto shall constitute a full and original agreement for all purposes.





8. Parent Company Guarantee

    The Parent Company Guarantee will be required from EZRA Holdings Limited for the full amount of the Loan.

9. General

    (a) Notices

    All notices, demands or other communications to be given or delivered under or by reason of the provisions of this Agreement will be in writing and will be deemed to have been given (i) three days after the date of mailing by Federal Express, DHL or other recognized international courier service, (ii) when personally delivered, or (iii) when such notice is transmitted by facsimile or email to the applicable party. Notices, demands and communications to the Borrower and the Lender will, unless another address is specified in writing, be sent to the address indicated herein.

    (b) Severability

    Whenever possible, each provision of this Agreement will be interpreted in such manner as to be effective and valid under applicable law, but if any provision of this Agreement is held to be prohibited by or invalid under applicable law in any jurisdiction, such provision will be ineffective only to the extent of such prohibition or invalidity, without invalidating any other provision of this Agreement.

    (c) Expenses

    Subject only to any limitation imposed by law, the Borrower agrees to pay on demand all expenses, including reasonable attorneys' fees, disbursements and legal expenses, incurred by the Lender in endeavoring to collect any amounts payable hereunder which are not paid when due, whether by acceleration or otherwise.

    (d) Waiver

    The Borrower hereby waives diligence, demand, presentment, protest or further notice of any kind. All payments to be made by the Borrower hereunder shall be made without setoff or deduction and regardless of any counterclaim or defense. No single or partial exercise of any power under this Agreement shall preclude any other or further exercise of such power or exercise of any other power. No delay or omission on the part of the Lender in exercising any right under this Agreement shall operate as a waiver of such right or any other right hereunder.

    (e) Successors and Assigns

    This Agreement shall be binding on the Borrower and its successors or assigns, and shall be binding upon and inure to the benefit of the Lender, and their respective successors and assigns. The

MES



**VT Halter Marine**
A company of VT Systems

Borrower may not assign or transfer this Agreement or any of its obligations hereunder without the Lender's prior written consent.

(f) Governing Law

All questions concerning the construction, validity and interpretation of this Agreement will be governed by and construed in accordance with the provisions of the internal laws of the State of New York, without giving effect to any choice of law or conflict of law provision. Borrower hereby irrevocably submits itself and its assets, and therefore waives any objections, to the exercise of personal jurisdiction over Borrower and its assets by state and federal courts of the State of Mississippi in any action or proceeding for the resolution of any disputes or any enforcement of this Agreement.

VT Halter Marine, Inc.
900 Bayou Casotte Parkway
Pascagoula, MS 39581

By: _____  2/26/15
Name: William E. Skinner
Title: CEO

Agreed and Accepted as of the date first written above:

EMAS-AMC, Inc.
2103 City west Blvd.
Suite 500
Houston, TX 77042

By: _____ March 2, 2015
Name:   Chris Tam
Title:   Regional Head
         EMAS AMC Inc

*Approved by MES Legal* (stamp)



## EXHIBIT A

## DEFINITIONS

| | |
|---|---|
| Agreement: | This letter agreement, as amended, restated, extended, supplemented or otherwise modified in writing from time to time. |
| Business Day: | Any day other than a Saturday, Sunday, or other day on which commercial banks are authorized to close under the laws of, or are in fact closed in the State of New York. |
| Total Loan Limit: | US$7,000,000.00 or the maximum amount incurred under the Repair Contract attached as Exhibit B, whichever is less. |

MES